UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

Chapter 11
Case No. 09-20024-FJB

In re: )
)
WITSOP-9, LLC, )
)
Debtor )
)
)

### LIMITED OBJECTION OF PILGRIM BANK TO MOTION OF CONFIRMED DEBTOR FOR ORDER AUTHORIZING SALE OF REAL ESTATE BY PRIVATE SALE, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND APPROVING NOTICE OF INTENDED SALE PURSUANT TO CONFIRMED PLAN OF REORGANIZATION DATED JUNE 8, 2010

TO THE HONORABLE FRANK J. BAILEY, U.S. BANKRUPTCY COURT JUDGE:

Now comes Pilgrim Bank, a secured creditor of the above-captioned Debtor, Witsop-9, LLC (the "Debtor") and, pursuant to B.R. 6004(b) and 9014 and MLBR 9013-1, hereby objects, on a limited basis, to the Confirmed Debtor's Motion For Order Authorizing Sale of Real Estate by Private Sale, Free And Clear of Liens, Claims, Encumbrances, And Interests, And Approving Notice of Intended Sale Pursuant To Confirmed Plan of Reorganization ("Debtor's Motion To Sell") upon the following grounds.

While the Debtor's Motion to Sell requests this Court to enter an Order authorizing it to sell Lots 1, 3 and 5 located at Morse Farm Estates, Hanover, MA (as described therein) "...pursuant to its Confirmed Second Modified First Amended Plan of Reorganization dated June 8, 2010, ...[and] in accordance with the Plan confirmed on June 22, 2010..." (the

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

"Confirmed Plan") the requested relief is not in accordance with the terms of the Confirmed Plan and must therefore be denied.

## I. RESPONSE TO DEBTOR'S MOTION

1. Admitted.

2. Admitted.

3. Admitted.

4. The terms of the Confirmed Plan speak for themselves.

5. Pilgrim Bank denies that the "Debtor has spent much time and effort to sell and close the remaining lots" as claimed and calls upon the Debtor to prove the same. Pilgrim Bank admits that Galvin has refused to comply with his obligation under the Confirmed Plan to purchase Lot 3 by his election to purchase Lot 5, as provided in the Debtor's Motion To Sell.

6. Pilgrim Bank admits that the Debtor has received and executed Purchase And Sale Agreements for Lots 3 and 1 as described in the Debtor's Motion To Sell.

7. Pilgrim Bank admits that the revised Distribution Schedule, identified as Exhibit E in the Debtor's Motion To Sell, deviates from the Lot Release Schedule attached to the Confirmed Plan, identified therein as Exhibit A, which identifies the payout to Pilgrim Bank after the sale of the Lots. Pilgrim Bank objects to Galvin receiving a credit towards his election to now purchase Lot 5 because this credit is available for his purchase of Lot 3, in the manner stated in the Confirmed Plan.

8. No response is required.

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-2-

9. Pilgrim Bank admits that this paragraph contains the Debtor's summary of the proposed sale of Lots 1, 3 and 5.

10. Pilgrim Bank objects to the proposed service of Motion and Notice for the Debtor's Motion To Sell for the reasons stated herein.

22. Admitted; however, counsel for Pilgrim Bank advised Debtor's counsel of Pilgrim Bank's objection to the Debtor's proposed sale of the Lots as described in the Debtor's Motion To Sell during that telephone conference.

## II. DEBTOR'S CREDIT RELATIONSHIP WITH PILGRIM BANK

Pilgrim Bank submits the following summary of material events describing its commercial credit relationship with the Debtor, its principals and related entities, based upon Pilgrim Bank's books and records.

Pilgrim Bank provided the Debtor with a commercial Note, in the original principal amount of $1,297,890.00, dated July 30, 2007, in order for the Debtor to purchase Morse Farm Estates, located at 639 Whiting Street, Hanover, MA, including a pre-existing home thereon, and to develop the remaining land into five (5) residential lots (hereinafter "Morse Farm" and/or the "Project"). The Note is secured, in relevant part, by the Pilgrim Bank's first Mortgage concerning Morse Farm and the parties' Security Agreement, of even date and amount, together with the Guaranties of Witsop Development Group, Inc., James V. O'Brien, and Robert J. Tombari, Jr., the latter two being the Third Party Proponents herein. The Hanover Planning Board issued its Special Permit for this Project on May 21, 2007. The Special Permit for this Subdivision was further extended to October 1, 2010 by the Hanover

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-3-

Planning Board. According to § 173 of c. 240 of the Acts of 2010, this permit approval is deemed automatically extended for an additional two (2) years.

On or about the Spring of 2008, the Debtor requested additional funds from Pilgrim Bank, in the amount of $150,000.00, for the following reasons: (a) reimbursement of Mr. Camarda's $100,000.00 deposit towards his purchase of Lot 5 (upon information and belief, that Purchase and Sale Agreement allowed the Debtor to use the deposit funds for the Morse Farm Project; however, Mr. Camarda terminated this Agreement, upon information and belief, due to construction delays); (b) $25,000.00 to retire a then-existing second Mortgage at another project of the Debtor's related entities known as Witsop-1, LLC ("Witsop-1") located at 644 Washington Street, Hanover, MA; and (c) $25,000.00 to cover legal and other expenses incurred in the Morse Farm Project. At that time and in relevant part, the Debtor agreed that this loan would be paid off via the sale of the first five (5) lots at Morse Farm Estates at $30,000.00 each. Pilgrim Bank's $150,000.00 commercial loan to the Debtor and Witsop-1 was made on April 2, 2008, evidenced by a Note of even date and amount, secured by a third Mortgage on Morse Farm and a second Mortgage on property located at 644-648 Washington Street, Hanover, MA owned by Witsop-1. (Witsop-1, LLC filed a Chapter 11 Petition on January 27, 2010, being Case No. 10-10711-FJB. This case is active.)

As a result of the Debtor's default under the parties' commercial loan agreements, Pilgrim Bank provided the Debtor with its Notice of Default and Demand for Payment, dated March 20, 2009. Subsequently, the parties entered into a Forbearance Letter Agreement, dated May 29, 2009. As a result of the debtor's material default under the parties' Forbearance Letter Agreement, the Bank duly noticed, published and scheduled its First Mortgagee's Sale of Real Estate to be conducted at Morse Farm on October 22, 2009 at 11:00 a.m.

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-4-

The Debtor filed its Chapter 11 Petition as a Single Asset Real Estate Debtor, pursuant to 11 U.S.C. § 101(51B), on October 21, 2009.

The Debtor's Second Modified First Amended Plan of Reorganization was confirmed by this Court on June 22, 2010 and is referred to herein as the "Confirmed Plan."

### III.  GROUNDS FOR OBJECTION

The Debtor's Confirmed Plan provides, in relevant part, that Lots 1, 2, 3, 5 and the existing Farmhouse would be sold and Pilgrim Bank "...shall be paid from partial payments on each lot sale...in accordance with the Lot Release Schedule attached as Exhibit A...." (See, Confirmed Plan; Article IV, § 4.1.; Exhibit A).

According to the Debtor's Confirmed Plan, the Plan would be implemented, in relevant part, by the sale of lots and "...[a]ny sale of a lot will be in accordance with the terms of this Plan of Reorganization, Debtor's Amended Disclosure Statement dated April 9, 2010 and the Bidding Procedures attached hereto as Exhibit B...." (See, Confirmed Plan; Article 5, § 5.1(e).).

Further, the Confirmed Plan provided that "...the Plan will be binding upon and inure to the benefit of the Debtor, its creditors, the Holder of Interests, and its successors and assigns." (See, Confirmed Plan; Article VII, § 7.7.).

The Confirmed Plan is a contract that binds the Debtor and Galvin, a creditor, whether or not he accepted the Plan. (See, In re Journal Register Co., 407 B.R. 520 (Bankr. S.D.N.Y. 2009; 11 U.S.C. § 1141(a)). Galvin did vote to accept the Confirmed Plan as described below. The Debtor is required to "...carry out the plan...." (See, 11 U.S.C. § 1142(a)). Since

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-5-

the Debtor's Motion To Sell proposes to sell the Lots in a manner that is contrary to terms of the Confirmed Plan it cannot be allowed.

   a. Sale of Lot 1

The Debtor proposes to sell Lot 1 to Spectrum Contracting, Inc. ("Spectrum") for a sale price of $225,000.00 in accordance with the Purchase and Sale Agreement, dated November 9, 2010, identified as Exhibit B to the Debtor's Motion To Sell.

Pilgrim Bank does not object to the sale of Lot 1 to Spectrum (provided it includes the "Guarantor Contribution" discussed below) because this sale is substantially in compliance with the Confirmed Plan and it appears to be an arm's length transaction. However, an additional provision must be added to the sale of Lot 1. According to Article V, § 5.1.(a) of the Confirmed Plan, the Debtor agreed to further fund the Plan by contributing "…a limited backstop payment over one year of $4000 toward any Bond shortfall." This financial contribution, being $800.00 per Lot, is included in the Debtor's Lot Release Schedule attached to the Confirmed Plan as Exhibit A and is identified therein as "Guarantor Contribution Total 4,000." The Guarantor Contribution for Lot 1 is identified as $800.00 on this Schedule, which formed a part of the Confirmed Plan.

Therefore, Pilgrim Bank does not object to the sale of Lot 1 to Spectrum as long as the terms of this sale include the $800.00 "Guarantor Contribution" described in the Confirmed Plan.

According to the Town of Hanover, and upon information and belief, the Road Bond funds are insufficient to complete the required work at Morse Farm, a condition precedent to the implementation of the Guarantor Contribution under the Confirmed Plan.

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-6-

b. Sale of Lots 3 and 5

The Debtor now proposes to sell Lot 3 to Jimmy M. Abboud, for a sale price of $238,500.00, as stated in the Purchase And Sale Agreement, dated November 9, 2010, identified as Exhibit A to the Debtor's Motion To Sell ("Abboud P & S"). However, the Debtor's Confirmed Plan obligates the Debtor to sell Lot 3 to James M. Galvin, Jr. ("Galvin"), as noted in the Debtor's Motion To Sell, for a sale price of $265,000.00, plus an $800.00 Guarantor Contribution, as described above. (See, Exhibit A to Confirmed Plan.) In relevant part, Article IV, Section 4.4 of the Confirmed Plan states:

> "…Galvin…shall have an allowed Secured Claim in the amount of $50,000.00. Galvin will receive this payment from the sale of Lot 3 in the form of a credit to the amount he is owed on his Note and Second Mortgage on Lot 3, after payment on Pilgrim's Note and senior lien. Any unpaid balance, deficiency or accrual on the allowed claim, will be paid on pro-rata basis in accordance with Class Six defined below. Galvin will execute a discharge upon closing on his purchase of Lot 3 or a closing by a third-party provided Galvin receives $50,000.00 payment defined infra. In the event Galvin is not the successful bidder for Lot 3, pursuant to the Court approved Notice and overbid/counter-offer procedures established by the Debtor for the sale of the lots pursuant to a confirmed Plan, then Galvin shall receive a $50,000.00 payment from the sale of Lot 3…."

According to the Debtor's Motion To Sell, the Debtor now proposes to sell Lot 5 to Galvin by Purchase And Sale Agreement, dated November 22, 2010, identified as Exhibit C ("Galvin P & S"), for a sale price of $225,000.00, to include $50,000.00 to be paid "…by means of a credit towards and discharge of his Second Mortgage and Security Agreement, which attaches to Lot 3 Morse Farm Estates…" and Galvin will pay $175,000.00 at the closing. (See, par. 3 of Galvin P & S). The Confirmed Plan provides that the sale price for Lot 5 is $250,000.00, with a Guarantor Contribution in the amount of $800.00 for a total of $250,800.00.

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-7-

(1.) <u>The Proposed Sales of Lots 3 and 5 Are Not Arm's Length Transactions And Cannot Be Approved</u>.

Upon information and belief, the Debtor's proposed sales of Lot 3 and 5 are not arm's length transactions. The Debtor advised that Abboud is living at the Farmhouse located at Morse Farm as a "Caretaker" and does not pay rent. Abboud's unauthorized occupancy of the Farmhouse and failure to properly maintain it in a condition that allows it to be shown to prospective purchasers forms part of the basis of Pilgrim Bank's intention to file shortly its Motion For Relief From Stay. Pilgrim Bank maintains that the Debtor has not used diligent efforts to market Morse Farm Estates for sale and to otherwise implement the terms of the Confirmed Plan.

The Bank also maintains that Galvin's failure to purchase Lot 3, as required under the Confirmed Plan, coupled with the proposal to sell Lots 3 and 5 in the manner stated in the Debtor's Motion To Sell, results in self-dealing that is reflected in the unreasonably low purchase prices for these properties.

If Galvin is allowed to purchase Lot 5, at a sale price that is $25,000.00 less than the sales price stated in the Confirmed Plan, and transfer his $50,000.00 credit from his obligation to purchase Lot 3, this will result in an unfair financial benefit to him. Further, it is inequitable to allow the sale of Lot 3 to Abboud for a sale price that is $26,500.00 less than the sale price of Lot 3 to Galvin as provided in the Confirmed Plan. These sales will provide a further financial windfall to the Debtor, Galvin and Abboud to the detriment of Pilgrim Bank which cannot be condoned by This Court.

Finally, neither proposed Lot sale incorporates the Guarantor Contribution, in the amount of $800.00 per Lot, set forth in Exhibit A to the Confirmed Plan.

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

- 8 -

(2.) <u>Galvin's Proposal To Purchase Lot 5 Constitutes A Breach of Contract</u>.

The proposed sales of Lots 3 and 5 do not conform to the terms of the Confirmed Plan. Galvin is entitled to a $50,000.00 credit from the sale of Lot 3, in accordance with the terms of the Confirmed Plan. Here, Galvin has chosen not to bid on Lot 3 nor to purchase Lot 3 as required by the Confirmed Plan.

§ 1141(a) of the Bankruptcy Code provides that a plan is binding upon all parties once it is confirmed. (See, <u>First Union Commercial Corp v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters Inc.)</u> 81 F3d 1310 (4th Cir. 1996) (citing <u>Stoll v. Gottlieb</u>, 305 U.S. 165, 170-171, 59 S.Ct. 134, 136-137, 83 L.Ed. 104, 107-108 (1938)). The confirmed plan is a contract that binds all parties. (See, <u>Miller v. United States</u>, 363 F3d 999, 1004 (9th Cir. 2004).

It is undisputed that Galvin voted to accept the Debtor's Plan of Reorganization. (See, <u>Affidavit of John M. McAuliffe Regarding Ballot Acceptance</u>, dated June 9, 2010, filed in open court on June 22, 2010 at 12:30 p.m.; being Document Number 126).

Should the plan fail, creditors may sue only on obligations as stated in the plan; unlike common law compositions, the original preconfirmation obligations are not revived should the plan not consummate. (See, <u>In re Jordan Mfg. Co.</u>, 138 B.R. 30, 36-37 (Bank.C.D.Ill. 1992). "A final order of confirmation terminates all rights of holders of claims and interests except as otherwise provided in the plan or the order confirming the plan, subject to revocation of the order of confirmation pursuant to section 1147." (See, <u>Collier Bankruptcy Manual</u>, Vol. 3, § 1141.02[1] (2010)).

Galvin's attempt to ignore his obligations under the Confirmed Plan constitutes a breach of contract as does the Debtor's Motion to Sell Lots 3 and 5 upon terms that are not in

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-9-

conformity with the Confirmed Plan. The parties engaged in several discussions and Court hearings to negotiate the terms of the Chapter 11 Plan prior to confirmation. Pilgrim Bank reasonably relied upon the Debtor's and Galvin's agreement, reflected by the Confirmation Order, obligating them to sell the Lots at Morse Farm upon the terms stated in the Confirmed Plan. Neither the Debtor nor Galvin should be allowed to ignore their obligations thereunder by allowing the proposed sales of Lots 3 and 5 as provided in the Debtor's Motion To Sell because this result would violate the terms of the Confirmed Plan, provide an unfair financial windfall to the Debtor, Galvin and Abboud, and would be unduly prejudicial to the interests and claim of Pilgrim Bank.

Since this matter was specifically addressed in the Confirmed Plan and the Debtor, Galvin and Pilgrim Bank were involved in the Chapter 11 reorganization resulting in the Confirmed Plan, all parties are required to honor their contractual obligations thereunder.

In order for property to be freed of claims and interests, the property must be dealt with by the plan. (See, In re Hillis Motors, 997 F2d 581, 29 C.B.C. 2d 490 (9th Cir. 1993)). Under § 1141(c), before a lien will be extinguished, not only must the property or claim be dealt with in the plan, but the creditor must have "participated in the reorganization." (See, FDIC v. Union Entities (In re Be-Mac Transport Co.), 83 F3d 1020 (8th Cir. 1996)). "If a plan provides for the vesting of property in the debtor, or for the transfer of property to a third party for the continued existence of a lien or the extinguishment of a lien, then the terms of the plan govern the property, and unless some provision is made for a party with an interest in the property, the property vests or is transferred free of any claim or interest in the property." (See, Collier Bankruptcy Manual, Vol. 3, § 1141.04[2] ; Star Phoenix Mining Co. v. West Bank One, 147 F3d 1145 (9th Cir. 1998)).

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-10-

Pilgrim Bank maintains that Galvin's purchase of Lot 3 entitles him to a credit of $50,000.00 for the release of his Mortgage on this particular lot, as provided in the Confirmed Plan. If Galvin does not purchase Lot 3, then he waives his right to this credit. Galvin has no right to a $50,000.00 credit if he chooses to purchase Lot 5, or any other Lot, as this credit applies only if he purchases Lot 3. Since Galvin participated in the Debtor's reorganization and this claim was "dealt with" by the Confirmed Plan, the Lots at Morse Farm must be sold in the manner provided in the Confirmed Plan in order for the property to be freed of claims and interests. Since the Debtor's Motion To Sell proposes to sell Lots 3 and 5 in a manner that is inconsistent with the terms of the Confirmed Plan it cannot be allowed.

### IV.    CONCLUSION

For the reasons stated herein: the Debtor's Motion To Sell Lot 1 should be allowed, upon the condition that the $800.00 Guarantor Contribution be provided as stated in the Confirmed Plan; and the Debtor's Motion To Sell Lots 3 and 5 should be denied.

Respectfully submitted,
**PILGRIM BANK**
By its attorneys,

/s/    *Martha J. Awiszus*
Martha J. Awiszus, Esq.
Winokur, Serkey and Rosenberg, P.C.
81 Samoset Street
Plymouth, MA 02360
(508) 746-1023
BBO #024595
Email: mawiszus@winokurlaw.com

Dated this 2nd day of March, 2011.

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-11-

## CERTIFICATE OF SERVICE

I, **Martha J. Awiszus**, Esquire, of Winokur, Serkey & Rosenberg, P.C., 81 Samoset Street, Plymouth, MA, as attorney for **Pilgrim Bank** in the within case, hereby certify that I served the Limited Objection Of Pilgrim Bank To Motion Of Confirmed Debtor For Order Authorizing Sale Of Real Estate By Private Sale, Free And Clear Of Liens, Claims, Encumbrances, And Interests, And Approving Notice of Intended Sale Pursuant To Confirmed Plan Of Reorganization Dated June 8, 2010 by causing a true and correct copy of the same to be sent by operation of the Court's ECF System to those individuals designated for electronic service by the ECF System in this case:

| | |
|---|---|
| John Fitzgerald | USTPRegion01.BO.ECF@USDOJ.GOV |
| Eric K. Bradford | Eric.K.Bradford@USDOJ.gov |
| John M. McAuliffe | mcauliffeassociates@hotmail.com |
| Rosemary A. Traini | rtraini@trainilaw.com |
| Michael Van Dam | mvandam@vandamlawllp.com |
| David A. DeLuca | ddeluca@mhtl.com |
| Andrew Shabshelowitz | shamban.estate@yahoo.com |

and that I served the foregoing by mailing copies of the same, by first class mail, postage prepaid, to:

Witsop-9, LLC
150 Long Water Drive, Suite 202
Norwell, MA  02061
(Debtor)

James M. Galvin, Jr.
248 Willard Street
Quincy, MA  02169

Donald R. Mailloux
3 Meredith Drive
Rockland, MA  02370

SLT Construction Corporation
Peter J. Opachinski, President
3 Marion Drive
Carver, MA  02330

American Engineering & Testing
14 Roc Sam Park Road
Braintree, MA  02184

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

Collins Landscape and Design
27 Robert J. Way
Plymouth, MA 02360

Contech Bridge Solutions, Inc.
16431 Collections Center Drive
Chicago, IL 60693

Gray, Gray and Gray, LLP
34 Southwest Park
Westwood, MA 02090

Internal Revenue Service
Special Procedures Function
P.O. Box 9112
JFK Building
Boston, MA 02203

Itron
2111 N. Molter Road
Liberty Lake, WA 99019

J & B Equipment
456 Columbia Road
Hanover, MA 02339

J&P O'Brien Family Ltd. Partnership
150 Longwater Drive, Suite 202
Norwell, MA 02061

James V. O'Brien
150 Longwater Drive, Suite 202
Norwell, MA 02061

John Hoadley & Sons, Inc.
672 Union Street
Rockland, MA 02370

JVO Corporation
150 Longwater Drive, Suite 202
Norwell, MA 02061

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-13-

MA Waste Systems, LLC
300 Centre Street
Holbrook, MA  02343

MA Dept. of Revenue
Bankruptcy/Litigation Union – 7th Fl.
P.O. Box 9565
100 Cambridge Street
Boston, MA  02114

Mckenzie Engineering Group
150 Longwater Drive, Unit 101
Norwell, MA  02061

National Grid
P.O. Box 81038
Woburn, MA  01813

Premium Financing Specialists
P.O. Box 26087
New York, NY  10087

Robert J. Tombari
150 Longwater Drive, Suite 202
Norwell, MA  02061

Robert J. Tombari, Jr. Family Trust
150 Longwater Drive, Suite 202
Norwell, MA  02061

Witsop Legal Advisory Group, LLC
150 Longwater Drive, Suite 202
Norwell, MA  02061

Witsop-1, LLC
150 Longwater Drive, Suite 202
Norwell, MA  02061

Collector of Taxes
Town of Hanover
550 Hanover St.
Hanover, MA  02339

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

Signed this 2nd day of March, 2011.

/s/ *Martha J. Awiszus*
Martha J. Awiszus, Esquire

mja.pilgrim.witsop-9.chapter11.limitedobjectiontomotionfororderauthorizingsale-certservice

WINOKUR, SERKEY
& ROSENBERG, P.C.
COUNSELLORS AT LAW
81 SAMOSET STREET
PLYMOUTH,
MASSACHUSETTS 02360
(508) 746-1023

-15-